UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA ex rel. REQUAYA HOLSEY and STATE of GEORGIA ex rel. REQUAYA HOLSEY,<br><br>    Plaintiff-Relator,<br><br>v.<br><br>ELITE HEALTHCARE ENTERPRISES, INC. AND DIANDRA BANKHEAD,<br><br>    Defendants. | CIVIL ACTION NO.:<br>1:18-CV-2318-JPB |

## ORDER

This matter is before the Court on the United States' and State of Georgia's Motion for Default Judgment [Doc. 62]. The Court finds as follows:

### PROCEDURAL HISTORY

On May 21, 2018, Requaya Holsey ("Relator") filed a qui tam action against Elite Healthcare Enterprises, Inc. ("Elite") under the Federal False Claims Act ("FCA") and the Georgia State False Medicaid Claims Act ("FMCA") on behalf of the United States of America and the State of Georgia (collectively, "the Government"). [Doc. 1]. The Government elected to intervene, [Doc. 48], [Doc.

49], and subsequently filed an Intervenor Complaint on August 17, 2021, [Doc. 52], against Elite and its owner, Diandra Bankhead ("Bankhead"), (Bankhead and Elite collectively referred to as "Defendant"). Defendant was served on August 25, 2021, therefore Defendant's deadline to answer was September 15, 2021. [Doc. 54].

On September 15, 2021, Defendant moved for an extension of time to answer the Intervenor Complaint to seek and retain proper legal representation. [Doc. 55]. Defendant's motion was unopposed, [Doc. 56], and the Court granted an extension of time through January 13, 2022, with a warning to Defendant that future extensions were unlikely due to the age of the case and the lengthy extension. See Sept. 28, 2021 Docket Entry. Thereafter, Defendant sought a second extension of time to answer, [Doc. 57-1], which the Court denied on January 18, 2022. [Doc. 58]. Due to a delay in mailing the January 18, 2022 Order to Defendant, the Court granted an extension to Defendant through February 10, 2022, to respond to the Intervenor Complaint. See Jan. 27, 2022 Docket Entry.

On March 15, 2022, the Government moved for Clerk's Entry of Default, which was entered on March 16, 2022. [Doc. 61]. See also March 16, 2022 Docket Entry. The Government then moved for Default Judgment on March 23, 2022, [Doc. 62], and the Court directed Defendant to respond by November 30,

2022, [Doc. 63].  In response, Defendant mailed a "Motion to Oppose Proposed Default Judgment" which was untimely delivered to the Government and does not appear on the docket of this case.  See [Doc. 65].  Defendant's Motion did not address the substance of the Government's Motion for Default Judgment, but rather asked for permission to proceed *pro se* and stated that Defendant needed time to prepare for trial.  Id.  Nevertheless, the Court granted an extension of time through January 27, 2023, for Defendant to respond to the Government's Motion for Default Judgment.  [Doc. 65].  On January 12, 2023, Defendant filed a "Motion to Oppose Proposed Default Judgment" that once again did not address the substance of the Government's Motion for Default Judgment but repeated the requests for permission to proceed *pro se* and time to prepare for trial.  Id.

To date, Defendant has filed neither an answer to the Intervenor Complaint nor a substantive response to the Government's Motion for Default Judgment.

## DISCUSSION

### A. Legal Standard

When a defendant fails to file an answer or otherwise defend, a court may enter judgment by default.  Fed. R. Civ. P. 55(b)(2).  Default judgments are typically disfavored.  Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244–45 (11th Cir. 2015).  "Entry of default judgment is only warranted when there is 'a

sufficient basis in the pleadings for the judgment entered.'" Id. at 1245 (quoting Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). In other words, "[t]he court may grant default judgment [only] on those claims brought by [the] [p]laintiff that are legally sufficient and supported by well-pleaded allegations." Earthlink, Inc. v. Log On Am., Inc., No. 1:02-CV-1921, 2006 WL 783360, at *1 (N.D. Ga. Mar. 24, 2006); see also Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988) ("In considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations of the plaintiff's complaint."); Functional Prods. Trading, S.A. v. JITC, LLC, No. 1:12-CV-0355, 2014 WL 3749213, at *11 (N.D. Ga. July 29, 2014) ("[A] default judgment cannot stand on a complaint that fails to state a claim.").

"Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim," and the Court must determine "whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Surtain, 789 F.3d at 1245 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

The Intervenor Complaint sets forth claims under the FCA and the FMCA, as well as common law unjust enrichment and payment by mistake claims. [Doc. 52]. At the outset, the Court notes that the Government does not seek recovery for

its unjust enrichment and payment by mistake claims and therefore, the Court will not evaluate the appropriateness of entering a default judgment as to those claims. [Doc. 62-1, p. 6]. Further, the Government does not seek recovery on all alleged false claims, but only on 505 of the 5,172 total alleged false claims. Id. at 7. In reaching its determination on default judgment as to the FCA and the FMCA claims, the Court considers first whether the Government stated a claim under the FCA and the FMCA before turning to the issue of damages and statutory penalties.

## B. Liability Under the FCA and the FMCA

As relevant here, to state a claim for liability under the FCA or the FMCA, the Government must allege that Defendant "(A) knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement" to get a false or fraudulent claim paid or approved by the Government. 31 U.S.C. § 3729 (a)(1).[1] The FCA defines "knowingly" as encompassing either "actual knowledge," "deliberate ignorance" or "reckless disregard." 31 U.S.C. §3729(b)(1). Although a showing of "specific intent to defraud" is not required,

---

[1] The language of the Georgia FMCA mirrors the Federal FCA but applies only to claims submitted to the Georgia Medicaid program. See O.G.C.A. § 49-4-168.1(a).

id., "the statute's language makes plain that liability does not attach to innocent mistakes or simple negligence," Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039, 1058 (11th Cir. 2015).

Claims asserted under the FCA are additionally subject to the pleading standards of Federal Rule of Civil Procedure 9(b). See United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F. 3d 1301, 1309–10 (11th Cir. 2002). Rule 9(b) provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." In the FCA context, this means the complaint must set forth "'facts as to time, place, and substance of the defendant's alleged fraud'" and "'the details of the [defendant's] allegedly fraudulent acts, when they occurred, and who engaged in them.'" Clausen, 290 F.3d at 1308 (quoting Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562 (11th Cir. 1994)); accord United States ex rel. Fox Rx, Inc. v. Omnicare, Inc., No. 1:11-CV-00962, 2012 WL 8020674, at *12 (N.D. Ga. 2012).

The allegations in the Intervenor Complaint are summarized as follows. Defendant Bankhead, acting through her company, Defendant Elite, submitted fraudulent credentialing information to the Georgia Department of Community

6

Health ("DCH") to become a certified Georgia Pediatric Program ("GAPP") provider.[2]  [Doc. 52].  Specifically, Bankhead falsely represented to Medicaid that an appropriately credentialed and certified registered nurse served as Elite's Registered Nurse Supervisor and conducted initial evaluations of GAPP beneficiaries per the GAPP program requirements.  Id.

The Intervenor Complaint further alleges that between September 2015 and April 2018, Defendant submitted fraudulent claims to Medicaid for services allegedly provided to GAPP beneficiaries that were tainted by fraudulent conduct.  Such conduct included providing unauthorized services, billing for services that were not rendered and upcoding.  Id.  The Intervenor Complaint provides examples of Defendant's alleged fraudulent activity and identifies specific dates of service, claim numbers, billing dates, billing amounts and paid amounts relevant to the alleged instances of fraudulent activity.  Id.

The Court finds the allegations contained in the Intervenor Complaint are sufficient to state a claim to relief that is plausible on its face and meet the Rule

---

[2]  GAPP-enrolled providers are reimbursed by the Georgia Medicaid program for the provision of in-home skilled nursing services to medically fragile children who require personal care services and assistance with mobility and ambulation.  [Doc. 52].

9(b) heightened pleading standard. Therefore, the requirement that the Intervenor Complaint adequately state a claim under the FCA and the FMCA is met.

   **C. Damages**

While the Court deems well-pleaded facts in a complaint admitted on a motion for default judgment, "'allegations relating to the amount of damages are not admitted by virtue of default; rather, the [C]ourt must determine both the amount and character of damages.'" Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1365 (N.D. Ga. 2011) (quoting Virgin Recs. Am., Inc. v. Lacey, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007)). Under Federal Rule of Civil Procedure 55(b)(2), the Court may conduct a hearing to determine the amount of damages. However, an evidentiary hearing under Rule 55(b)(2) "is not a *per se* requirement." SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). Instead "it is a decision that is left to the discretion of the Court." Gibson v. Kirkwood Bar & Grill, LLC, No. 1:13-CV-308, 2014 WL 632357, at *1 (N.D. Ga. Feb. 18, 2014). Entering default judgment on the amount of damages without an evidentiary hearing is appropriate where the amount claimed is capable of mathematical calculation and "where all essential evidence is already of record." Smyth, 420 F.3d at 1232 n.13; see also Frazier, 767 F. Supp. 2d at 1365 ("District courts in the Eleventh Circuit have noted that an evidentiary hearing is not

necessary where the moving party has provided supporting affidavits as to the issue of damages.").

In this case, treble damages and civil penalties are statutorily dictated by the FCA and the FMCA. As the Government recites in its Motion for Default Judgment, any person who violates the FCA or the FMCA is liable to the Government for treble damages—which are three times the amount of damages that the Government sustains—plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1); O.C.G.A. § 49-4-168.1(a). The FCA civil penalty amounts are periodically adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (the "Inflation Adjustment Act"). 28 C.F.R. § 85.1. For violations occurring between September 28, 1999, and November 1, 2015, the civil penalty amounts range from a minimum of $5,500 to a maximum of $11,000 per violation. See 28 C.F.R. § 85.3. For violations occurring on or after November 2, 2015, the civil penalty amounts range from a minimum of $13,508 to a maximum of $27,018 per violation.[3] See 28 C.F.R. § 85.5.

---

[3] The Court notes that at the time the Government submitted its Motion for Default Judgment, the FCA civil penalty amounts ranged from a minimum of $11,665 to a maximum of $23,331 per violation. Pursuant to the Inflation Adjustment Act, on January 30, 2023, the FCA civil penalty amounts were

The Government alleges it suffered damages amounting to $1,194,875.00 from Defendant's fraudulent submission of claims to Medicaid for GAPP-related services. [Doc. 52]; [Doc. 62-1]. The Government's requested damages are based on Georgia Medicaid claims records and are supported by a declaration by the Chief Investigative Auditor in the Medicaid Fraud Division of the Office of Georgia Attorney General. [Doc. 62-1]; [Doc. 62-3]. Based on the mandatory treble damages provisions of the FCA and the FMCA, the Court can definitively calculate $3,584,625.00 as the total amount of damages at issue in this case.

As for statutory penalties, the Government seeks to recover the minimum level of penalties on 505 of the total 5,172 false claims that Defendant allegedly submitted. [Doc. 62-1, p. 8]. The Government seeks recovery on 5 out of the 56 false claims that Defendant allegedly submitted on or before November 1, 2015, and 500 of the 5,116 false claims that Defendant allegedly submitted on or after November 2, 2015. Id. at 8–9. Looking to the statutory framework of the FCA and the FMCA for guidance, the Court can calculate a definite civil penalty amount to impose for this group of claims. As mentioned above, the Court

---

adjusted for inflation to a minimum of $13,508 and a maximum of $27,018. See 28 C.F.R. § 85.5. The FMCA also adopts the federal penalty structure, including inflation adjustments pursuant to the Inflation Adjustment Act. See O.G.C.A. § 48-4-16.8(a).

assesses the Government's requested minimum penalties for the claims submitted after November 1, 2015, at the current minimum level which has been updated since the Government filed its Motion for Default Judgment. See 28 C.F.R. § 85.5. As a result, the total civil penalties in this case amount to $6,781,500.00.

Because the damages and civil penalties in this action are easily calculated based on the number of claims, amount of damages submitted by the Government and guidance from the FCA and the FMCA, the Court concludes the Government's damages can be ascertained without a hearing.

## CONCLUSION

For the reasons stated above, the Government's Motion for Default Judgment is **GRANTED**. Accordingly, it is hereby **ORDERED AND ADJUDGED** that default judgment against Defendant be entered and that the Government recover damages from Defendant in the amount of $3,584,625.00. It is further **ORDERED AND ADJUDGED** that civil penalties in the amount of $6,781,500.00 be imposed on Defendant.

**SO ORDERED** this 13th day of February, 2023.

J. P. BOULEE
United States District Judge